# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-778v
Filed: August 23, 2019
(Unpublished)

| | | |
|---|---|---|
| INES CHICOS, *on behalf of LC*, | * | |
| | * | |
| Petitioner, *pro se*, | * | Special Master Oler |
| | * | |
| v. | * | |
| | * | Pediarix vaccination; seizure disorder; |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | statute of limitations |
| | * | |
| Respondent. | * | |

*Ines Chicos, pro se*, Sunnyside, NY, for Petitioner.

*Heather L. Pearlman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DISMISSAL DECISION[1]

On May 24, 2019, Ines Chicos ("Petitioner") filed a petition for compensation with the National Vaccine Injury Compensation Program,[2] alleging that her minor daughter, L.C., developed a seizure disorder as a result of her Pediarix vaccinations received on February 9, 2008, April 5, 2008, and June 9, 2008. Petition ("Pet."), ECF No. 1.

### I.   Summary of Medical Records

In conjunction with her petition, Petitioner filed medical records and several articles. Ex. 1-31, ECF No. 1. A birth certificate and vaccination record for L.C. were also included. Ex. 1, 2.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

L.C. was born on December 4, 2007 by caesarian section. Ex. 3 at 2. On February 9, 2008, April 5, 2008, and June 13, 2008, L.C. received three separate doses of Pediarix, along with other regularly administered vaccinations provided to newborns and infants. Ex. 2 at 1. No medical records for these visits have been filed.

Petitioner states that in October 2008, L.C. presented to Dr. Basson, a neurologist, for muscle jerks on the right side of her body.[3] Pet. at 2. On December 2, 2008, L.C. presented with "h/o jerks and head drops" to New York Presbyterian Hospital, where she was evaluated by Dr. Murray Engel. Ex. 13 at 6. L.C. underwent video electroencephalography as well as an MRI. *Id.* at 5-6. L.C.'s symptom onset was recorded as October 2008, and she was diagnosed with benign myoclonic epilepsy. *Id.* at 1.

Petitioner states that in February 2009, L.C. was hospitalized at New York University Langone Center and evaluated by Dr. Daniel Miles. Pet. at 2. She adds that L.C. was admitted in May 2009 to Montefiore Hospital Center and evaluated by Dr. Sholomo Shinar. *Id.* Petitioner recalls that Dr. Shinar diagnosed L.C. with Infantile Spasms. *Id.* The records for these appointments were not filed, although laboratory results ordered by Dr. Shinar in August 2009 were included. *See* Ex. 14.

On June 7, 2010, L.C. was evaluated by Dr. Joseph Maytal at North Shore LIJ Hospital. Ex. 15. She was noted as having "spasm-like repetitive movements" from 10 months of age. *Id.* at 4. Her EEG results from that visit were normal. *Id.*

Petitioner states that on June 20, 2015, L.C. was seen by Dr. John Salerno, who she described as a "functional doctor." Pet. at 2. She recalls that Dr. Salerno indicated "[L.C.'s] clinical course of seizures could be side effect of immunizations." *Id.* No notes from this visit have been included; however, laboratory results ordered by Dr. Salerno were filed. *See generally* Ex. 16.

On April 18, 2017, Petitioner presented to Dr. Steven Wolf at Mount Sinai Beth Israel. Ex. 19. Dr. Wolf diagnosed L.C. with "intractable generalized idiopathic epilepsy without status epilepticus." *Id.* 1. In his notes, Dr. Wolf noted the medical history provided by L.C.'s parents, including L.C.'s numerous food sensitivities and the heavy metal testing conducted by Dr. Salerno. Dr. Wolf further recorded that "mom feels that it is the additives in the vaccinations that caused the seizures – particularly aluminum." Ex. 19 at 1-5.

## II.   Procedural History

On June 17, 2019, I held a status conference via telephone with the parties to discuss the issue of the statute of limitations. Following the conference, I issued an Order to Show Cause on June 20, 2019, directing Petitioner to file a brief explaining why her claim should not be dismissed as time-barred. ECF No. 7.

---

[3] Dr. Basson's medical records have not been filed.

2

On August 12, 2019, Petitioner filed a response to my Order to Show Cause, dated August 8, 2019. ECF No. 11. In her brief, Petitioner stated that the Court should apply equitable tolling and extend the statute of limitations imposed on her petition. Specifically, Petitioner asserts the following:

1. Petitioner does not believe that she was properly informed of the risks of vaccination when L.C. received her vaccinations, in part because she states she was not provided with information regarding all of the possible side effects or the "Vaccine Injury Court rules." *Id.* at 1. Petitioner argues that "the right to informed consent to any medical intervention… is a human right" and that "due to the fact that [her] rights to information were waived, [she] could not exercise [her] rights to apply on time." *Id.* at 1-2.

2. Petitioner does not believe that informed consent was given at the time of vaccination. According to Petitioner, the Pediarix insert states that data regarding the safety of administering four doses of Hepatitis B vaccine are limited, and, therefore, "[L.C.] was subject to unsafe medical procedures without informed consent similar with Nuremberg and Tuskegee cases." *Id.* at 2.

3. Petitioner believes that L.C. was administered aluminum at a much higher quantity than the "FDA's upper limit of 5/mcg/kg/day." *Id.* at 4.

Petitioner concludes that she was not able to file within the three-year statutory limit "due to a consistent lack of information about side effects of vaccination, as well as [she] had no idea of Vaccine Court Injury existence." *Id.* at 6.

I provided Petitioner and Respondent an opportunity to supplement the record and submit any additional documents. The parties indicated that they had nothing further to add. Respondent waived his right to brief the issue.

### III. Legal Standard

The statute of limitations, or the timeframe within which a person who has sustained a "vaccine-related injury" must file a claim, is outlined in § 16(a)(2) of the Vaccine Act:

> [I]f a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury ***after the expiration of 36 months*** after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

*Id.* § 300aa-16(a)(2) (emphasis added). The statute begins to run from the manifestation of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis. *Carson v. Sec'y of Health & Human Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013). Whether a petitioner knows the cause of his injury is not significant for purposes of the statute of limitations. *See Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322 (Fed. Cir. 2011).

3

In *Cloer*, the United States Court of Appeals for the Federal Circuit reiterated the Vaccine Program's 36-month statute of limitations. *Id.* In doing so, the court recognized that equitable tolling, an extension of the three-year limit, can be applied in vaccine cases under very rare and extraordinary circumstances, for example, those involving fraud or duress. *Id.* The court cites *Pace v. DiGuglielmo* for the proposition that "equitable tolling requires a litigant to have diligently pursued his rights, but that 'some extraordinary circumstances stood in his way.'" *Id.* at 1344, quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). The statute of limitations and the higher courts' rulings are binding on my decision.

### IV.   Discussion

L.C. received her first Pediarix vaccination on February 9, 2008, her second Pediarix vaccination on April 5, 2008, and her third Pediarix vaccination on June 13, 2008. Ex. 2 at 1. According to Petitioner, L.C. developed a "severe skin rash on the body" after the first vaccination. Pet. at 3. In September 2008, L.C. developed "jerks" and presented to Dr. Basson the following month. *Id.* at 1-3. Soon after, L.C. was diagnosed with benign myoclonic epilepsy. Ex. 13 at 1. The record in this case indicates that "the first symptom or manifestation of onset" occurred between September and October of 2008. Under the Vaccine Act, Petitioner was required to file her petition by October 2011. 42 U.S.C. § 300aa-16(a)(2). The petition in this case was filed on May 24, 2019, more than ten years after symptom onset and more than seven years out of time.

In reviewing Petitioner's submissions and considering Petitioner's representations during the status conference and in her response to the Order to Show Cause, I can find no basis to toll the statute of limitations. Petitioner does not claim to be the victim of fraud or duress, within the applicable legal boundaries of those concepts. Because no "extraordinary circumstances" prevented Petitioner from filing her petition, the statute of limitations in this case is not subject to equitable tolling. In fact, on June 20, 2015, Dr. Salerno told Petitioner that L.C.'s "clinical course of seizures could be [the] side effect of immunizations."[4] Pet. at 2. While a lack of knowledge regarding a possible causative link does not warrant tolling of the statute, even after Petitioner was informed of a purported connection between L.C.'s seizures and her vaccinations, Petitioner still waited more than three years to file her petition.

Accordingly, I find that Petitioner's claim is barred by the statute of limitations. I do recognize and appreciate Petitioner's concern for L.C. and her medical condition. This Court simply does not have the jurisdiction to entertain her petition.

**Thus, this case is DISMISSED as untimely.   The Clerk shall enter judgment accordingly.**

A copy of this decision shall be sent to Petitioner by regular first-class mail as well as certified mail at the following address:

Ines Chicos
47-20 42nd Street, Apt. 2H
Sunnyside, NY 11104

---

[4] As indicated previously, no records from Dr. Salerno, "a functional doctor," were ever filed. Pet. at 2.

Any questions regarding this Order may be directed to my law clerk, Devarati Das, at 202-357-6347 or by email at devarati_das@cfc.uscourts.gov.

**IT IS SO ORDERED.**

Katherine E. Oler
Special Master